IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**OHIO COUNTY COMMISSION**, et al.,

        Plaintiffs,

v.                                            **Civil Action No. 5:24-CV-142**
                                                           Judge Bailey

**EXPRESS SCRIPTS, INC.**, et al.,

        Defendants.

## ORDER

On July 11, 2025, the parties to this action filed a Status Report providing alternative suggestions on how this matter should proceed. [Doc. 183]. On July 28, 2025, this Court convened a Status Conference to hear discussion concerning the progress of this case. [Doc. 187]. Based upon the foregoing, this Court **ORDERS** as follows:

    1.    The case of *City of Wellsburg v. Express Scripts, Inc.*, Civil Action No. 5:25-CV-164 shall be consolidated with this case for all issues with this being the lead case;

    2.    This Court will hold a Bench Trial on the issue of public nuisance beginning **August 4, 2026, at 9:00 a.m.**  The issues to be considered are:

Issue #1:  Whether the Defendants engaged in wrongful conduct which caused the alleged oversupply and diversion of opiods throughout West Virginia; and

Issue #2: Whether the alleged oversupply and diversion of opiods throughout West Virginia is a public nuisance, which is broadly defined as an unreasonable interference with a right common to the general public's health and safety.

General causation will be addressed in the Phase I trial of liability for public nuisance against the Defendants. If general causation is proved in any of the Phase I trial, then specific causation will be addressed in a Phase II, statewide abatement trial. Phase I will address whether Defendants caused the oversupply and diversion of opioids in West Virginia. Phase II will address causation of opioid epidemic harms in Plaintiffs' communities that relate to the equitable remedy of abatement.

The causes of action contained in the operative Complaint other than public nuisance will be severed from this trial.

Such bifurcation is consistent with the MLP's (West Virginia Mass Litigation Panel's) bifurcated trial plan in *In Re: Opioid Litigation*, Civil Action No. 19-C-1900 (Cir. Ct. Kanawha Cty) which (after the Supreme Court of Appeals of West Virginia refused to disturb via a writ of prohibition) led to the successful resolution of the claims of sixty-three (63) West Virginia governmental plaintiffs and the State of West Virginia, and all cases pending in the MDL. (*In re Nat'l Prescription Opiate Litig.*, 1:17-MD-2804 (N.D. Ohio)) in an efficient and fair manner.

Consistent with the procedure set forth by the MLP, if one (1) or more Defendants are found to be liable in Phase I, this Court will then set an expedited bench trial on causation and abatement. The Court intends to hear evidence on a single, statewide abatement remedy and will consider allocation of fault amongst those Defendants found liable for purposes of inchoate contribution.

This Court agrees with the reasoning of the MLP that the Plaintiffs contend the opioid crisis that is the subject of this Mass Litigation is a public nuisance for which the Defendants should be held liable. The opioid crisis is ubiquitous. It knows no boundaries and is not limited to a specific city or county in West Virginia. The Court finds that a consolidated Bench Trial to determine whether the Defendants are liable to the City/County Plaintiffs for public nuisance will promote judicial dispatch and economy, while avoiding the prejudice and confusion of multiple, single plaintiff trials. It will also promote convenience of the parties and witnesses, conserve available judicial resources, and substantially decrease the length of time, amount of expense, and burden on all parties of trying multiple lawsuits to determine whether the Defendants are liable for public nuisance as to each city or county. MLP October 27, 2021 Order, TID 67047934 at ¶ 7.

This Court agrees that depositions will be limited to account for the discovery already conducted in the other opioid cases and to ameliorate the burden on witnesses and the parties. Specifically, Plaintiffs may already cross-notice the multiple depositions of Defendants being taken concurrently in other opioid cases, including the two (2) bellwether cases in the middle of fact discovery currently brought by the cities of Rochester, New York, and Ogdensburg, New York in the MDL, as well as the cases currently in active discovery brought by the State of Alaska and the City of Martinsville, Virginia. Given the numerous depositions Plaintiffs will have access to and can participate in, this Court directs that Plaintiffs are limited to five (5) depositions of non-expert witnesses (any cross-noticed depositions will not count against Plaintiffs' deposition limit) and that Defendants should be limited to twenty (20) non-expert depositions.

This Court further directs that absent an agreement between Plaintiffs and the Defendants, no party shall re-depose any witness whose deposition a party received notice of and declined to cross-notice.

Further, for any witness that has already been deposed in the MDL, then a party is required to demonstrate good cause exists for that party to depose that witness, instead of designating that witnesses' prior deposition testimony.  A party should show that an additional deposition is warranted because the witness is likely to have knowledge that is specific to Plaintiffs' claim (e.g., Ohio County, West Virginia specific knowledge) that was not available at the time of the witnesses' prior deposition, and that such topics were not discussed in the prior deposition.  Any new depositions of previously deposed witnesses should be limited in scope to only these new topics.

The Parties are directed to meet and confer in good faith regarding depositions of any witnesses already deposed in the MDL to determine if good cause does exist, and if so, the scope of any such deposition.

For the reasons noted above, this Court will adopt the ruling of the MDL Court which held: "The parties will make a good faith effort to limit their deposition questions of all witnesses, including experts who have previously been deposed in the opioid litigation, to matters that were not inquired into or adequately addressed in the witness's prior depositions."

This Court adopts the Plaintiffs' proposal that they exchange fact sheets using the format previously agreed to in the MDL opioid cases.  A number of Plaintiffs with cases in the MDL opioid litigation have already submitted these fact sheets.  Plaintiffs propose that

the remaining Plaintiffs produce fact sheets on a rolling basis under the schedule set forth below.

An ESI agreement and proposed protective order shall be provided by **August 15, 2025**.

Plaintiff fact sheets shall be provided on a rolling basis on or before **December 31, 2025.**

Defendant fact sheets shall be provided on or before **October 31, 2025**.

All fact and Phase I expert discovery shall be completed by **May 29, 2026**.

Expert witnesses with burden on non-abatement issues shall be disclosed by **March 31, 2026**.

Expert witnesses without burden on non-abatement issues shall be disclosed by **April 30, 2026**.

Motions in Limine shall be filed on or before **June 12, 2026**, with responses filed **fourteen (14) days** thereafter.

Rule 23(a)(3) disclosures shall be filed on or before **June 12, 2026**, with objections filed **fourteen (14) days** thereafter.

Dispositive motions shall be filed on or before **June 12, 2026**, with responses due **July 3, 2026**, and replies due **July 13, 2026**.

Mediation shall be completed by **June 30, 2026**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** August 4, 2025.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE